# UNITED STATES

*v.*

# MANUEL CERECEDO ET AL.

San Juan, Criminal, No. 553.

### The Court's Instructions to the Jury.

**Lottery** Tickets—Conspiracy to Sell.

1. Under §§ 37 and 237 of the Penal Code of the United States, it is unlawful for one to bring into the United States, for the purposes of sale, any lottery ticket; and each party to such conspiracy is subject to fine and imprisonment. This applies to conspiring to bring lottery tickets into Porto Rico from San Domingo.

Criminal Law—Court and Jury.

2. A jury is as much a part of the court as a judge, for the time in which they serve. The jury decides matters of fact, the court matters of law, both of which are involved in every case.

Criminal Law—Conspiracy.

3. While no formal agreement is necessary to constitute a conspiracy, there must be an intentional participation in the acts with a view to the furtherance of the common design.

Criminal Law—Measure of Proof.

4. While in a civil case a slight preponderance of testimony will decide, in a criminal proceeding a man cannot be convicted unless the jury is convinced beyond a reasonable doubt by the evidence. This doubt does not mean a strained conjecture, but an actual mental hesitation, due to an insufficient or unsatisfactory evidence.

Same—Evidence.

5. Testimony in court is either by witnesses or documents, and if either is admitted by the judge, it must be considered by the jury. The jury has nothing to do with the source of testimony admitted by the court.

United States v. Cerecedo.

Same—Mutilation of Evidence.

6. If mutilated evidence is admitted, it is for the jury to determine its weight and credibility. If a paper is so mutilated that it can still be made out, it may be considered. If it is impossible to restore it, it will not be considered. All circumstances must be taken into account.

Same—Handwriting Expert.

7. The court passes upon the admissibility of a witness as an expert, and the jury determines from his evidence what importance to attach to his testimony.

Testimony—Weight.

8. The fact that witnesses have given different testimony in other cases goes to their credibility. The jury must take all circumstances into account, and reconcile the evidence if possible. The witnesses' testimony may be true in some particulars and false in others. The weight is for the jury.

Conspiracy—Crime—Testimony.

9. It is not necessary that witnesses to a criminal case be men of the highest standard. Such men are not usually connected, directly or indirectly, with crime.

Accomplice—Corroboration.

10. An accomplice is not to be believed unless he is corroborated by the evidence of other circumstances or other witnesses. Its co-operative acts, may prove conspiracy.

Conspiracy—Overt Act.

11. The crime of conspiracy is not now, as formerly, confined to an agreement between the conspirators, but must be evidenced by some overt act of theirs carrying the conspiracy into effect.

Same—Proof.

12. Conspirators do not generally perform such acts in public, and the crime is often proved by circumstances and a combination of isolated incidents, having in view a common end. By conspiring the conspirators jointly assume the attribute of individuality as to the common design.

Conspiracy—Evidence.

13. Joint action on a material point, or collation of independent co-operative acts, may prove conspiracy.

United States v. Cerecedo.

Conspiracy—Acts of Conspirators.

14. Where evidence showing the existence of a conspiracy is admitted, the acts of the several conspirators may in all cases be given in evidence against each other if done in pursuance of the common illegal object. They all make up the *res gestæ*.

Conspiracy—Servant.

15. The fact that one is a servant does not prevent his being a co-conspirator with his master; and in such case his acts bind his employer.

Conspiracy—Meeting Unnecessary.

16. It is not necessary that conspirators meet together, or even be acquainted with each other. If they conspire through a common acquaintance, the conspiracy may be complete, and the act of one is the act of all.

Importing Lottery Tickets—Conspiracy.

17. To carry out a conspiracy to bring lottery tickets into the United States for disposition violates the laws of the United States.

Conspiracy—Secret Signs.

18. The fact that signals, secret correspondence, and code words are used, would be expected, and tend to show a conspiracy.

Importing Lottery Tickets—Elements.

19. Importing lottery tickets from San Domingo to Porto Rico for sale would involve, among other overt acts an agreement, furnishing the San Domingo tickets in San Domingo, bringing the tickets from San Domingo by boat, landing them in Porto Rico, probably secretly, their disposition in Porto Rico, either directly or by agents and correspondents, and the accumulation of books and papers.

Evidence—Defects.

20. It is not to be expected that every scrap of evidence will be produced in a case; and it is sufficient if enough is shown to produce a conviction beyond a reasonable doubt.

Criminal Case—Sympathy.

21. Sympathy plays no part in judicial proceedings. If families are affected, this is not to be considered by the jury. It should have been considered by the parties before going into the crime charged, if the defendants have committed the crime.

Verdict—Form.

22. In a proceeding for conspiracy a verdict may be rendered

United States v. Cereccdo.

against one in connection with another defendant, but it is not necessary to render a verdict against all the defendants.

Opinion filed March 25, 1914.

——————

*Mr. W. N. Landers,* United States attorney, for the government.

*Mr. Martin Travieso, Jr.,* for defendants.

HAMILTON, Judge.

Gentlemen of the Jury, we have now reached, so far as the public part of the cause is concerned, the end of the longest case which has been tried in this court during the past year. I cannot speak of more than one year. You have found it, as I have, I do not doubt, very interesting, and it is a matter of considerable importance. In the first place, it is important to the defendants. If your verdict finds them guilty, it means a very serious punishment. You have nothing to do, however, with the punishment. You simply find the verdict guilty, or not guilty, as the case may be. It is the duty of the court to take all the facts into account, and, if you say guilty, to proportion a proper punishment. You have nothing to do with that. It is serious, therefore, for the defendants. On the other hand, gentlemen, it is serious for the United States. It is a matter, I suppose I may say, of public repute, at least, that there has been a great deal done in the way of sale of lottery tickets in Porto Rico. If the evidence should convince you

that it is due to the activity of these defendants, it would be no more than right that you should find them guilty, and by that, so far as you are concerned, do your duty to the public in putting a stop to this traffic. Of course this is subject to the question of whether you find them guilty or not.

1. The indictment by the grand jury is for conspiracy to violate § 37 of the Criminal Code of the United States, and is in part as follows: The Grand Jurors of the United States present that Manuel Cerecedo, Jacinto Y. Mañon, Carlos Valle, and Andres Grillasca, and divers other persons to the Grand Jurors unknown, did wilfully and maliciously conspire, combine, and confederate to commit an offense against the United States, to wit, to bring and cause to be brought into the United States, to wit, the island of Porto Rico, from a foreign country, to wit, the Republic of Santo Domingo, for the purpose of disposing of the same, papers, certificates, and instruments, purporting to be or to represent a ticket, and so on, dependent in whole or in part upon chance, to wit, in the lotteries Junta de Caridad and Manicomio "Padre Ballini," Republic of Santo Domingo, in violation of § 237 of the Criminal Code of the United States. Then it goes on and states the different details. That is the indictment for violating by conspiracy § 37 of the Penal Code of the United States [35 Stat. at L. 1096, chap. 321, U. S. Comp. Stat. Supp. 1911, p. 1600].

This section reads: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the con-

United States v. Cerecedo.

spiracy, each of the parties to such conspiracy shall be fined," etc., as the court may determine.

That is the conspiracy statute. Now the offense which they are alleged to have conspired to commit is found in § 237 of the same Code [35 Stat. at L. 1136, chap. 321, U. S. Comp. Stat. Supp. 1911, p. 1661], and is as follows: "Whoever shall bring or cause to be brought into the United States, or any place subject to the jurisdiction thereof, from any foreign country, for the purpose of disposing of the same, any paper, certificate or instrument purporting to be or to represent a ticket, chance, share, or interest in or dependent upon the event of a lottery, gift enterprise, or similar scheme offering prizes dependent in whole or in part upon lot or chance, or any advertisement of, or list of the prizes drawn or awarded by means of, any such lottery, gift enterprise, or similar scheme," etc., shall be punished in a certain way. So that is the offense with which these defendants are charged,—conspiring to bring within Porto Rico from Santo Domingo certain lottery tickets, papers connected with a lottery.

2. Now there is this division between your functions and mine. You and I make up the court. I have no higher duty than you have. Your duty is just as absolute as mine, and there is no choice between them at all. You are members of the court for a few days while I am for a few years, but the principle is the same. You are just as much the United States court as I am. You decide matters of fact; I decide questions of law. That is the difference between us. You can see that every criminal charge must involve two things,—the definition of the crime is given in the law, and facts which do or do not connect the defendants with the commission of that crime.

That is the reason for the division of the functions. I tell you what are the elements making up the crime, and you find on the evidence whether there are facts which show that the defendants have committed this crime or not.

3. The crime of conspiracy is an old one. It has been defined in this way. We find it in vol. 8 of what is called 'Cyc.," Page 620: "It has been said that there is perhaps no crime an exact definition of which it is more difficult to give than the offense of conspiracy. The essentials of a conspiracy, whether viewed with regard to its importance in a criminal prosecution or its significance in a civil action for damages, are commonly described in this general language: It is a combination between two or more persons to do a criminal or an unlawful act, or a lawful act by criminal or unlawful means. This definition perhaps is not perfectly accurate, but is sufficient as a general description of the offense. To constitute a conspiracy there must be a combination of two or more persons; one person cannot conspire with himself. To constitute a conspiracy there must be unity of design and purpose, for the common design is of the essence of the conspiracy. The mere knowledge, acquiescence, or approval of the act, without cooperation or agreement to co-operate, is not enough to constitute one a party to a conspiracy. There must be intentional participation in the transaction, with a view to the furtherance of the common design and purpose. No formal agreement between the parties to do the act charged is necessary. It is sufficient that the minds of the parties meet understandingly so as to bring about an intelligent and deliberate agreement to do the acts and commit the offense charged, although such agreement be not manifested by any formal words. If two persons pursue

United States v. Cereccdo.

by their acts the same object often by the same means, one performing one part of the act and the other another part of the act, so as to complete it with a view to the attaining of the object which they were pursuing, this will be sufficient to constitute a conspiracy. Previous acquaintance is unnecessary, and it is not essential that each conspirator should know the exact part to be performed by the other conspirators in execution of the conspiracy."

So the charge before you is of conspiracy under that definition. Before taking up the law especially applicable to conspiracy, let me, as I usually do, give you some directions which would apply to almost every criminal case, and which, because they apply to every criminal case, apply to this one, too.

There is, to start with, a presumption of innocence which is invoked by the defendants, very properly,—that is to say, the American and English courts, and possibly some courts on the Continent of Europe, presume that a man is innocent until he is proved guilty. Now that does not mean that he is presumed innocent all the time. It simply means that at the beginning he is presumed innocent until enough facts are adduced to prove him guilty.

4. There is also another principle properly invoked in this case and every other case, that a higher measure of proof is required in a criminal than in a civil case. In a civil case where it is a matter of dollars and cents, where it cannot be anything except a matter of dollars and cents or the equivalent of it, the law permits a jury or a court to decide according to a preponderance of the evidence. That is to say, if there is a good deal of evidence on one side and a good deal on the other, but one side has a little preponderance over the other, the court

would find that way, that is, a little bit of overweight would be sufficient. The American law is much more tender towards those who are accused of crime, and it says that you cannot find a man guilty unless you are convinced beyond a reasonable doubt by the evidence in the case. This does not mean that the burden of proof is on the prosecution to satisfy the jury of the truth of the charge against the person accused to an absolute certainty, however. That is not required in any trial. A greater degree of mental conviction is required in criminal cases than in civil cases. The degree of satisfaction and certainty required is not absolute conviction or certainty, but the evidence must produce such effect upon the minds of the jury that, after its consideration, they can, in view of their oaths to try him impartially, have no reasonable doubt of the guilt of the party accused. By reasonable doubt is not meant a strained or whimsical conjecture or a guess, but an actual mental hesitation, caused either by insufficient evidence or unsatisfactory evidence. That is the meaning, as far as we can define it, of reasonable doubt.

5. The matter of proof in any case is developed in one of two or three ways; either by witnesses on the stand who tell what they saw or what they heard, as the case may be, by deposition, although depositions are not used in criminal cases, or by papers. And when it comes to papers, letters, books, and what not, such as we have in great mass in this case, it is not the concern of the jury how they are obtained. It seems that these were obtained in most part by searches of the store and houses of two of the defendants. That does not cencern the jury at all. It is what is proved by the papers themselves that is for

United States v. Cerecedo.

you. It is for the court to pass upon the competency of the evidence; that is to say, whether it is admissible; and the court has passed upon it, and that is not for you one way or the other. The only question for you to consider about these papers is, Do they or do they not prove the accusation in this case? If they do, you will weigh them for whatever they are worth. If they do not, of course you will disregard them; but all these papers that you see before you are in the case and are to be considered by you. I do not mean that you have to take them now one by one and go over them. You may be satisfied by the presentation of them made to you, but the case hangs upon these papers, and you are to satisfy yourselves one way or the other about them. The same is true, for instance, as to telegrams. Telegrams, like the mail, are private, and when you send a telegram, it is true that that is private. The rule is that nobody else can see that telegram. There is one exception, however, and one exception that must obtain in every civilized country. It is this, that there must be some authority which is above everything else, and that authority in this case is the United States government, or rather, under the United States Constitution, it is this court, of which you make up a part. The judge as representing the law part of the court has the right, where it becomes important to the points in the case, to issue what is called a *subpœna duces tecum* to a telegraph company or anybody else, to produce papers in its charge, and the company must produce them. Whether they apply to the case being tried, of course, is another matter. They may or may not apply, but, when once admitted, they are evidence before the jury, and the jury must regard them just the same as

United States v. Cerecedo.

if they had been voluntarily produced by anybody else. In other words, the matter of source, again, is not material so far as you are concerned.

6. There are some alleged lottery tickets in this case which have a square hole, perhaps two square holes or more, punched through them, and that is a mutilation of this evidence. It is perfectly proper for you to take that into account in measuring the weight and in deciding upon the credibility of the testimony. If you think, from examination of it, that so much has been destroyed that you cannot tell what it is, you would disregard it. If, on the other hand, you know by other tickets which are in evidence, or by other testimony, what was in those places, what was struck out or canceled out, you may, for the purpose of your own mental satisfaction, restore those papers as they were, and will consider them. In other words, the mutilation of a paper by itself does not disqualify that paper as evidence. It may be so mutilated that you cannot find out what it was originally. That is one of the matters you are to decide upon. If you should find that a paper is mutilated in an important particular for some malicious purpose, then you would take that into account in weighing it, of course; but if your minds are satisfied with the explanation given, that the part was struck out to make it no longer usable, if that is true to your satisfaction, you would regard the paper just the same as if it were a perfect ticket,—I mean for the purpose of evidence. So you see mutilation is a relative term. It is to be taken into account, but more or less according to circumstances.

7. Then as to a comparison of a handwriting, which figures quite largely in this case also. The government has called as a witness an alleged expert who compared proved handwriting

of one of the defendants with handwriting in other papers which are important in the case. The United States says the comparison shows that a certain book in evidence was in the handwriting of the defendant Cerecedo. The defense, on the other side, says that this expert had only seven or eight letters to go by, simply the signature of the defendant Cerecedo, that there was no more to it than those three or four signatures of Shakespeare which are all we have of his handwriting, and therefore that there is not much to go on in the way of expert testimony. It is for the court to admit an expert as an expert. It is for you to decide the amount of weight you will attach to the expert. If you think that *c* and *e* and *r* and *o,* etc., are letters which occur so often in correspondence that they can be used as a basis, you will believe this expert. If, on the other hand, you think that is too small a basis to go on, you would attach very little importance to this testimony. I do not know that Sherlock Holmes has ever been mentioned as a legal authority, but still the principle is true that Sherlock Holmes probably could take two or three letters and find out all that the case required him to find out. How far that is true in this case I do not know. There are some remarkable stories told of that kind, and it is for you to say whether Mr. Swartz is in that category; whether his experience and what he had to work on are sufficient to convince you that he was right. It is true, too, there are certain peculiarities to which he testified, which he finds in this book. I mention this in order that you may see that it is for you to pass upon the amount of credit to be attached to the expert. It is not for me, and I do not wish to be understood as reflecting favorably or unfavorably upon him. The court simply admits him as an expert, holds that he has

United States v. Cerecedo.

risen to the rank of an expert. As to how high an expert, it is for the jury to decide.

8. Then there is this question in the case: There are a great many witnesses, and one of them seems to be a convict, and another is, by his own testimony, shown to be acting in connection with these defendants, and perhaps there are some others with peculiarities. Some are shown, or claimed at least, to have given different testimony on other occasions. That is all for you to pass upon. If a witness is impeached by his character or by his conduct or by contrary assertions or statements in another case, it would be for you to say how much credibility you would attach to his statements; but recollect that you are not bound even in such cases to disregard the witness's testimony altogether. You may regard it as of less value. You may in a proper case, if you think that he has been so impeached, decide that it is not worth thinking about his testimony at all. You may disregard it; but you are not lightly to do that. It is the duty of the jury to take all the circumstances and all the witnesses into account, and to reconcile them if you can. A man is not lightly to be said to be a liar. If you stop one moment to think of it, this is in one sense the worst crime that can be committed, not only in the decalogue, but in human life,—to lie. If you cannot believe a person, that may be the end of your reliance upon him in any way, when you want to do business with him, or anything else. So you are not to say very readily, offhand, that that man lied. You are to consider his testimony, and see if it is not a mistake, rather than a lie, and, even if he is lying as to one thing, it is quite possible that he may be telling the truth in something else that may furnish

a link in a chain of evidence. This is a matter for you to determine. I simply call your attention to it.

9. There is this to be recollected, that you cannot expect a case of conspiracy to commit a crime to be testified to in all respects by the leading members of the community, by the citizens having the highest rank in the community. You would hardly expect this case, for instance, to be proved by the testimony of Bishop Jones, Mr. Odell, and others who stand high in the community. The people of that character are not those who deal in lottery tickets; are not those who have much to do with crime. So if some witnesses are not men of the highest rank, it would not be an unnatural situation. If they were dealing with lottery tickets, knowing it was against the law, you can see that, right there, there is some imputation upon them. So that it is not a question of throwing out all testimony because a person may not be of the highest rank socially, or a question as to his purity in any respect.

It is for you, gentlemen, to recollect that you have a serious matter before you, a serious duty before you. We cannot help the testimony as it comes to us. Here it is. It is all in this case, and as fully as you are likely to have it in any case that will ever be presented to you, and it is for you to decide upon all the circumstances and all the testimony which you have heard and all the facts in evidence, what is the truth of this matter, and act up to what your conclusion of the truth is, without fear or favor. So much, then, for the kinds of evidence and the kinds of testimony that are in this case.

10. As to an accomplice, if there should be one who is an accomplice, who is doing part of this same conspiracy, there is this to be said about him,—he is not to be believed alone. Not

that the law throws any discredit upon him, but from the fact that he already has been engaged in the same thing, it is not regarded by the law as public policy to allow the other man to be convicted upon his testimony alone. So that if there is a witness in this case of that character, if Sanchez, I believe it is, should be regarded by you as being a helper in carrying out this joint conspiracy, you would not take his testimony alone, but, if corroborated by other circumstances or by other witnesses, it may become of value in making up one of the links of the case.

So much, then, for the general principles that you are to consider. The competency of the evidence, the question of admitting evidence, is for the court. If the court has made any mistake, the defendant in the proper way has his remedy. That is no concern of yours whatever; your concern is with the credibility or weight to be attached to these different pieces of admitted evidence.

11. Now coming to this special case; this, as we have seen, is a charge of conspiracy to bring lottery tickets into the United States or Porto Rico for purposes of sale. Conspiracy used to form a very well-known and very much-used part of the law in the old days, and the gist of the offense was regarded as the conspiring,—two or more people getting together out in the woods or in secret and agreeing to do something. That was regarded as the gist of the offense. That is no longer so. Under § 37, I think it is, of the United States Penal Code, or § 5440 of the Revised Statutes of the United States, U. S. Comp. Stat. 1901, p. 3676, that is changed. Hyde v. United States, 225 U. S. 347, 56 L. ed. 1114, 32 Sup. Ct. Rep. 793, Ann. Cas. 1914A, 614. It is no longer simply the conspiracy.

United States v. Cerecedo.

If that was so, the fact that certain of these defendants signed an agreement over in Santo Domingo, by which one was to furnish and the other was to take tickets and bring them over here, if that is to your mind properly proved, would have been all that was needed to be shown in the case. That would be in itself a conspiracy to do something; but it is not so now. There are two things necessary. There must be a conspiracy and there must be some act, overt act is the technical expression, carrying out the conspiracy. So those two things must coincide. There must be this agreement, this contract, if that be properly proven, on the one side, and there must be some open act carrying out that agreement. It is only fair to call your attention to this fact. It has been decided time and again, and nowhere better perhaps than in a New York case, that conspirators generally do not go out in the middle of the road and make their arrangements and carry out their plans. It would not be much of a conspiracy if they did, it would be more like a public meeting. So you are not to expect in this case, or any case of conspiracy, or any case of the violation of law, unless it be one man shooting another in anger, for the act to be public. Conspiring will be done in secrecy, and the evidence in such cases will be mainly circumstantial. One fact may prove very little, and it is for you to take all of the facts together, and say whether together they amount to conviction. Proof of a combination such as is charged in the indictment must almost always be extracted from the circumstances connected with the transaction which forms the subject of the accusation. "In the history of criminal administration the case is rarely found in which direct and positive evidence of criminal combination exists. To hold that nothing short of such proof is sufficient to establish

VI. Porto Rico—41.

a conspiracy would be to give immunity to one of the most dangerous crimes which infest society. Hence, in order to discover conspirators, we are forced to follow them through all the devious windings in which the natural anxiety of avoiding detection teaches men so circumstanced to envelop themselves, and to trace their movements from the slight, but often unerring, marks of progress which the most adroit cunning cannot so effectively obliterate as to render them unappreciable to the eye of the sagacious investigator. It is from the circumstances attending a criminal, or a series of criminal acts, that we are able to become satisfied that they have been the results not merely of individual, but the products of concerted and associated, action, which, if considered separately, might seem to proceed exclusively from the immediate agents to them; but which may be so linked together by circumstances, in themselves slight, as to leave the mind fully satisfied that these apparently isolated acts are truly parts of a common whole; that they have sprung from a common object, and have in view a common end. The adequacy of the evidence in prosecutions for a criminal conspiracy to prove the existence of such a conspiracy, like other questions of the weight of evidence, is a question for the jury." This is from a very eminent law book,—2 Wharton, Crim. Law, § 1665.

12. From the very nature of the crime of conspiracy, it is almost invariably secret in its origin. Naturally every precaution is taken when several deliberately unite to commit a crime so injurious to the public welfare. It is rarely, therefore, the case that there is an actual witness to the unlawful combination itself or to the circumstances attending its origin. It is peculiarly, therefore, a crime where the evidence of motive and

United States v. Cereccdo.

circumstances is available as indicating the animating cause of the unlawful combination and the unlawful agreement itself. It is not required, therefore, that the conspiracy or the act of conspiring need be proved by direct testimony. It is indeed competent to show the conspiracy by showing disconnected overt acts, where the proof also shows that the conspirators were other than together, or acted through a common medium and had a common interest in promoting the object of the conspiracy. A common design is the essence of the charge of conspiracy, and this is made to appear when the parties steadily pursue the same object when acting separately or together by common or different means, all leading to the same unlawful result. When they do so act with a common and unlawful resign, the principle on which the acts and declaration of other conspirators, and acts done at different times, are admitted in evidence against the persons prosecuted, is that by the act of conspiring together the conspirators have jointly assumed to themselves as a body the attribute of individuality, so far as regards the prosecution of the common design; thus rendering whatever is done or said by one in furtherance of that design a part of the *res gestæ*, and therefore the act of all. 2 Wharton, Crim. Law, § 1665; see also a New York case, Jones v. Baker, 7 Cow. 445.

13. Proof of conspiring may be inferred from circumstances and the concurring conduct of the defendants, and said conspiracy need not be directly proved. You are charged that any joint action on a material point, or a collation of independent co-operative acts, by persons closely associated with each other, is sufficient to authorize you to infer concurrence of sentiment; and one competent witness not an accomplice will suffice to prove the co-operation of any individual conspirator.

If, therefore, you find from the evidence in this case, beyond a reasonable doubt, that two or more persons, acting in concert, are apparently pursuing the same object, often by the same means, one performing part of the act, and the other completing it, for the attainment of the object, then you may draw the conclusion that there is a conspiracy.

14. What is the nature or the character of the proof necessary to support a charge of conspiracy? One cardinal rule of evidence to which it is my duty to call your attention on this subject is this: Where evidence showing the existence of the conspiracy is submitted to the jury, the acts of other conspirators may in all cases be given in evidence against each other, if these acts were done in pursuance of the common illegal object. It is also true that letters written and declarations made by other conspirators are admissible if they are among the things done in pursuance of the conspiracy. It is also true that declarations of the conspirators may be considered a part of the *res gestæ,*—that is, part of the things done in pursuance of the conspiracy,—although they may not be precisely concurrent with the act under trial. It is enough if they spring from it, and are made under circumstances which preclude the opportunity or idea of a fictitious device or afterthought. It is also true that, while the declarations of co-conspirators made after the enterprise is ended are not admissible against each other, yet if they are made during the enterprise, in pursuance of and tending to the accomplishment of the object for which the conspiracy was made and overt acts were performed, they are admissible.

15. The fact that one of the conspirators was a servant or employee of another conspirator does not preclude there being

a conspiracy between them; and until there is an affirmative withdrawal from the conspiracy by the servant, his acts bind his employer and co-conspirator. An instance is found in Hyde v. United States, 225 U. S. 347, 56 L. ed. 1114, 32 Sup. Ct. Rep. 793, Ann. Cas. 1914A, 614.

16. It is not necessary that the conspirators should meet together in order to constitute the unlawful combination. If they have a mutual understanding and act through one or more individuals, as a consequence of such mutual understanding, the conspiracy may be complete, and the declarations of the co-conspirators, made while the criminal enterprise was pending, are admissible against each other. It is indeed not necessary that all the conspirators should be acquainted with each other. If they conspire to accomplish the illegal purpose through one common acquaintance or go-between, the conspiracy may be complete; and in that event the act of one conspirator is the act of all. As conspiracy is a joint offense, you will understand that, if several persons jointly conspire to commit a crime, as each man is acting through all the others, or as all are acting equally through one, the degree of guilt is equal,— the guilt is equally distributed, and each man is not only charged with all the guilt, but the law declares that the act of his co-conspirator is his act. He loses his individuality, and becomes identified with the crime with which, and the criminal with whom, he is associated.

If you find from the evidence, beyond a reasonable doubt, that there was an unlawful confederation or combination of two or more persons, or, in other words, if you find from the evidence beyond a reasonable doubt that there was a conspiracy to accomplish an illegal purpose entered into by the defendants

United States v. Cerecedo.

Manuel Cerecedo, Jacinto Y. Mañon, Carlos Valle, and Andres Grillasca, as alleged in the indictment, then I charge you that the act of one of the conspirators is the act of all.

Where several persons are proved to have combined together for the same illegal purpose, any act done by one of the parties, in pursuance of the original concerted plan, and with reference to the common object, is, in the contemplation of law, the act of the whole party, and therefore the proof of such act will be evidence against any of the others who were engaged in the same conspiracy.

Any declarations made by one of the parties during the pendency of the illegal enterprise is not only evidence against himself, but is evidence against the rest of the parties, who, when the combination is proven, are as much responsible as if they had done the act themselves.

17. Importation of lottery tickets into the United States from a foreign country is prohibited under § 237 of the Penal Code of the United States, which I have read to you.

If, therefore, you believe from the evidence beyond a reasonable doubt, that the defendants herein conspired, confederated, and agreed among themselves or together to bring or cause to be brought into the United States or any place subject to the jurisdiction thereof, from any foreign country, for the purpose of disposing of the same, any paper, ticket, etc., representing a share in a lottery, dependent in whole or in part upon lot or chance, it is an unlawful agreement, and the doing of the act is made an offense by the laws of the United States. That is settled in United States v. Lyman, 190 Fed. 414.

18. So you see that much of the evidence in this case you must expect to be circumstantial. Of course the other side

United States v. Cerecedo.

must be remembered. Circumstances must not be distorted out of their usual and proper meaning to make a case against anyone. Nothing could be more abhorrent to civilization, especially that of the United States, than any forced construction of the facts to make a man guilty when he is not guilty. But, in regard to this particular offense, it is nevertheless true that circumstances are what must necessarily be relied upon.

If there had been a conspiracy to bring lottery tickets into Porto Rico, among the things which might be supposed to be necessary, one of the things not unexpected, would be the fact that the conspirators agreed, acting one in one place and another in another, upon a code of signals of some kind. That in their correspondence they would use words which were understood by themselves, and, if the papers fell into public hands, could not be correctly construed. They would call a lottery ticket a handkerchief, or a product, or a cross-tie, or anything else. That would be perfectly natural; if people are combining to break the law, they are not going to do it except in a secret way which they would understand and the public would not understand. And if they are going to conspire to bring such things into a Spanish-speaking country, and they did not want to use the name of that country, it might not be unnatural to speak of it as Spanish territory; and similar things would be only what you would expect if this case is what is alleged by the government. That from this you must draw the necessary result of guilt, I do not say, but I do say that the circumstances and the secrecy might indicate just that line of conduct.

19. Suppose that there was such a conspiracy to bring Santo Domingo lottery tickets into Porto Rico; there would be in the way of overt acts the agreement, to start with. That might be

here or it might be in Santo Domingo, but there would be the agreement; and then there would have to be some overt acts. There might be evidence of those overt acts in several places, but there surely would be something done in Santo Domingo, and it is for you to say whether the evidence convinces you that certain of these parties signed a contract in Santo Domingo by which one defendant, Mañón, was to furnish the tickets and another, Cerecedo, was to dispose of them in Porto Rico. There is a paper in evidence purporting to be to that effect. That paper has been admitted. If it seems to you to be true, there would be the first element of conspiracy. There would be the intent and the signing of the paper.

But tickets supplied in Santo Domingo would have to be brought in a vessel. There is no railroad from here to Santo Domingo, and there is no flying machine yet. So if there was such a conspiracy, the tickets would have to be taken on board of a vessel. It is for you to say whether the evidence in this case satisfies you that there was a vessel. One of the defendants, Carlos Valle, seems to be shown to have acted as the captain of a small seven-ton sloop, the Vencedor, and if he changed the register from coastwise to foreign, and took tickets on board with the intention of bringing them over here, that would be his part in the conspiracy. That would make him as much guilty as if he had performed any of the other parts, under the authorities which I have cited to you.

But the tickets would not only have to come by sea, something would have to be done with them over here. They would have to be landed here, and would have to be disposed of here. So that if you are satisfied from the evidence that the tickets were brought over here, and landed secretly by night, and

delivered to some party in shallow water in no regular port, that would be a circumstance which you would naturally expect in a case of this sort.

The next thing would be the disposition of them here, and there would be some sale provided for here, and it is for you to say whether the evidence in this case convinces you beyond a reasonable doubt that the defendant Cerecedo superintended the sale or distribution and sale of tickets here. And in that connection I can call your attention to a fact that is in the case, and whose weight is for you to pass upon. If there is evidence in the case of a direct sale by the defendant Cerecedo to any party, the court charges you that that can be taken as evidence of this conspiracy, in furtherance of this conspiracy, an overt act in this conspiracy. It is just what would be expected if there had been tickets brought into the island for purposes of sale. If there are letters to and from Cerecedo containing accounts, or containing agreements to buy, or recommendations as to sales, that would be an element to be taken into account also. If the letters and cables contain secret words, that is something which is just what would be expected in the course of such a secret proceeding as is alleged. If you find that there were salesmen employed to distribute tickets around the island, that may be looked at as another evidence of carrying out this conspiracy. If you find that there are books in evidence, in which Cerecedo or any other defendant kept accounts of sales of tickets to different people, what he sold to them and what he got back from them, that would be evidence which you could and should take into account, if you believe that they are proved to be in the handwriting of the defendant.

20. I think I have gone over the main elements of the case.

United States v. Cerecedo.

You are to recollect that even in a haul made by the police it is not to be expected that everything will be brought into court. It is too much to ask in any case that every element making up the transaction should be brought before the jury. It is for you to say simply whether enough has been brought before you to convince you that there was this conspiracy in Santo Domingo to bring lottery tickets over here for sale. If there are defects in certain elements of it, if some things have not been shown you, but if, on the other hand, enough is shown you to produce a conviction beyond a reasonable doubt, then you would have to find for the government.

21. In this case, of course it is hardly necessary to state,—the same is true in every criminal case,—that you are not to take into account at all any question of sympathy. If the defendants are guilty, they are guilty,—that is all there is to it. It is a matter which they should have considered before they went into the business. If they are innocent, they are innocent; and sympathy has nothing to do with either horn of the dilemma. It is one or the other, and you are not to allow your sympathies to play any part on one side or the other. Your sympathy with the government to see a great evil stamped out should not lead you to infer anything against the defendants, nor should anything connected with the defendants' families have anything to do with your decision. That they leave families at their homes when they took their departure from them, today, does not matter in the court at all. The question simply is: Are these defendants guilty, or are they not guilty?

You will take with you to your room all the written evidence, but I want to ask you to be very careful with it, particularly the alleged lottery tickets. There is a great mass of them, and

if you pull them apart and scatter them, and they get blown away, it would not be a very good thing. They may be needed on other occasions. That is not the way to treat evidence in any case. Examine them all you want to, but do not allow them to get scattered about.

In this case, gentlemen, I am going to ask you to agree upon a verdict if it is possible. The case has taken so long that you can readily see that the court desires an agreement upon a verdict one way or the other.

Are there any exceptions on either side?

The District Attorney: I am satisfied.

Mr. Travieso: No, Your Honor.

22. You will retire now, gentlemen, in the charge of the marshal. Two forms of verdict will be given you. If you find for the government, your foreman, whom you will select, will sign and return this form of verdict: "We, the jury, duly impaneled and sworn upon the trial of the above-entitled case, find the defendants, Manuel Cerecedo, Andres Grillasca, and Carlos Valle, guilty of the crime of conspiracy as charged in the indictment." You observe that the name of Mañon is not in this verdict. He has not been arrested, and so is not on trial. And I may add that you may find upon the evidence any two defendants guilty. You could not just find one guilty unless in connection with Mañon, but Mañon being in the case, you could find any one or more of the defendants guilty. I do not mean that you should not find them all so if they are all guilty, but if you should be convinced as to one and not as to the others, you should return a verdict of guilty as to him. On the other hand, if you find for the defendants, the form will be: "We, the jury, find the defendants not guilty." You will now retire and consider your verdict.